Stephen B. Morris (SBN 126192)
**THE LAW OFFICES OF STEPHEN B. MORRIS**
147 Elm Avenue
Imperial Beach, CA 91932
Cell: (619) 985-4462
Email: smorris@stephenbmorrislaw.com

Lance Rogers (SBN 258088)
**The Law Offices of Lance Rogers**
768 13th Street
Imperial Beach, CA 91932
Tel. (619) 333-6882
Email: lance@lrogerslaw.com

Attorneys for Plaintiffs and the Putative Class

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

MARVEL HARRISON, ATTILA CSANADI, LAWRENCE DANIEL MALCOLM, CHAD TALBOT, ALENA TALBOT, JOHN PORCELLA, LENORA PORCELLA, SHANNON JOHNSON, SHAWN JOHNSON, DAVID THOMAS

Plaintiffs

v.

VEOLIA WATER WEST OPERATING SERVICES, INC.,VEOLIA WATER NORTH AMERICA WEST, LLC

Defendants

Case No. '24CV1584 AJB BLM

**COMPLAINT FOR:**

**(1) NUISANCE**
**(2) NEGLIGENCE**

**REQUEST FOR JURY TRIAL**

## I. SUMMARY

This is a class action lawsuit brought by residential homeowners in Imperial Beach, California, arising from the failure by defendants to remedy or at least ameliorate polluted waters off the coast of Imperial Beach. Plaintiffs bring this action to recover damages resulting from the defendants' failure to remedy the pollution present in the waters adjacent to Imperial Beach, California, resulting from pollution originating in Tijuana, Mexico, and the resulting dimunition in value of residential homes in Imperial Beach, and loss of enjoyment of the residents of Imperial Beach due to the smell and toxicity created thereby, and the inability of Imperial Beach residents to freely enjoy the waters of their beach community.

## II. BACKGROUND FACTS

1. Since October 2020, the South Bay International Wastewater Treatment Plant ("SBIWTP"), which is owned by the U.S. Section of the International Boundary and Water Commission ("IBWC"), has been negatively impacted by effluent flows from Mexico, exceeding design capacity and normal reasonably anticipated maintenance.

2. The SBIWTP is a 25 million gallon per day secondary treatment plant located in San Diego County, California, about 2 miles west of the San Ysidro Port of Entry. The plant treats sewage originating in Tijuana, Mexico and discharges it to the Pacific Ocean through the South Bay Ocean Outfall, a four and one-half mile long 11foot diameter pipe completed in January 1999.

3. The SBIWTP was designed to deal with the growing demand for the

treatment of wastewater resulting in the contamination of the Tijuana River in the United States. It has been an ongoing concern since 1934 when the International Boundary Commission (IBC) was instructed by the United States and Mexican governments to cooperate in the preparation of a report on the Tijuana sewage problem. The SBIWTP is capable, when it is working, of providing secondary treatment for 25 million gallons per day (mgd) average daily flows of sewage in excess of the Tijuana sewage system capacity, but has expansion capability of up to 100 mgd.

4. The SBIWTP was built on a 75-acre site near the international boundary in the U.S. immediately north of Tijuana's main wastewater pumping station. Resulting from the establishment of a binational interagency "Clean Water Partnership," the United States and Mexico approved IBWC Minute No. 283 dated July 8, 1990. This Minute authorized the construction of the SBIWTP. The Government of Mexico contributed $16.8 million toward construction of the SBIWTP and currently contributes $2.0 million toward the annual operation and maintenance costs.

5. Funding for the U.S. share of construction costs was appropriated through the Environmental Protection Agency in the amount of $239.4 million. Of that amount, $225.5 million had been obligated as of 2002, of which $89.2 million was given to the City of San Diego and the Corps of Engineers to construct the South Bay Ocean Outfall; $8 million was given to the Corps of Engineers for environmental work; and $127.4 million was given to the USIBWC for the costs associated with the

construction of the SBIWTP and related infrastructure.

6. On December 18, 2023, the San Diego Regional Quality Control Water Board ("San Diego Water Board" or "the Board"), the administrative agency that issued and enforces the National Pollutant Discharge Elimination System Permit Order No. R9-2014-0229, NPDES No. CA0108928, and Order No. R9-2021-0001, NPDES No. CA0108928, as amended by Order No. R9-2023-0009 ("NPDES Permit" or "Permit"), adopted Time Schedule Order No. R9-2023-0189 ("TSO"), which required IBWC to comply with the Permit's secondary effluent limitations by August 15, 2024 and set task deadlines and corresponding interim goals to amelioriate the pollution arising from the South Bay Ocean Outfall. (SBOO). There has been no adequate compliance and the polluting conditions persist, causing harm to plaintiffs. The photograph below depicts sediment and plant filled tanks at the Plant.



7. Recently, in August 2024, announcements were made that the Plant would be modernized to accommodate the increased sewage flow, but such plans, while somewhat positive, are "too late and a dollar short," and are anticipated to take 5-7 years, even if accomplished, based upon present funding, which is unlikely. Sewage plumes continue to manifest directly off the coast of Imperial Beach, as reflected in the below photograph.



8. The discharge of effluent from the SBIWTP to the Pacific Ocean through the SBOO is a significant and ongoing source of pollution affecting Imperial Beach, often requiring beach closures and adverse effects to wildlife and human health. True and correct copies of pollution warning signs posted daily on Imperial Beach appear below.




KEEP OUT
OF WATER
SEWAGE/CHEMICAL
CONTAMINATED WATER
WATER CONTACT
MAY CAUSE ILLNESS
KEEP OUT
OF WATER
SEWAGE/CHEMICAL
CONTAMINATED WATER
WATER CONTACT
MAY CAUSE ILLNESS
BY ORDER OF THE HEALTH OFFICER
COUNTY OF SAN DIEGO
ENVIRONMENTAL HEALTH & QUALITY
(619) 338-2073 sdbeachinfo.com




## III. THE PARTIES

9. Plaintiffs Marvel Harrison, Attila "Tom" Csanadi, Lawrence Daniel "Dan" Malcolm, Chad Talbot, Alena Talbot, John Porcella, Lenora Porcella, Shannon Johnson, Shawn Johnson, and David Thomas, all own homes in Imperial Beach, California. Each has suffered a compensable pecuniary loss resulting from the actions or inactions of defendants.

10. Defendant Veolia Water West Operating Services, Inc. is a corporation headquartered in Aubervilliers, France and doing business in this judicial district.

11. Defendant Veolia Water North America-West, LLC is a limited liability company incorporated in Delaware. It maintains its corporate headquarters in Boston, Massachusetts, and maintains offices in multiple locations, including San Diego, California. Plaintiffs refer to the Veolia defendants collectively as "Veolia."

12. As yet unnamed defendant, the International Waste Boundary

Commission (IWBC), is a federal government agency headquartered in El Paso, Texas. Plaintiffs have filed, or will file shortly, a claim pursuant to the Federal Tort Claims Act (FTCA) against IWBC and will amend this complaint to add said defendant once authorized to do so. (See 28 U.S.C. section 1346(b) et seq.)

13. Plaintiffs bring this class action pursuant to Rule 23, in that diversity exists and the amount in controversy exceeds $5 million. Too, the class exceeds 10,000 persons. Plaintiffs bring this action on behalf of themselves and all members of the putative class. “Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant has a controlling interest, and its current or former employees, officers, and directors; (3) counsel for Plaintiff and Defendant; and (4) legal representatives, successors, or assigns of any such excluded persons.

14. The Class is so numerous that joinder of all members is impracticable. Though the exact number and identities of Class members are unknown at this time, based on information and belief, many thousands of persons own homes in Imperial Beach, California.

15. Common questions of law and fact exist as to all Class members. These common questions of law or fact predominate over any questions affecting only individual members of the Class.

16. Plaintiffs’ claims are typical of the claims of the respective Class they

seek to represent, in that the named Plaintiffs and all members of the proposed Class have suffered economic harm as a result of the same conduct by defendants alleged herein. Plaintiffs have no interests adverse to the interests of the other members of the Class.

17. Plaintiffs will fairly and adequately protect the interests of the Class, and they have retained attorneys experienced in class actions and complex litigation as counsel.

18. Plaintiffs aver that the prerequisites for class action treatment apply to this action and that questions of law or fact common to the Class predominate over any questions affecting only individual members and that class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy which is the subject of this action. Plaintiffs further state that the interests of judicial economy will be served by concentrating litigation concerning these claims in this Court, and that the management of the Class will not be difficult.

## IV. JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332.

20. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because all of the events giving rise to the claims alleged herein, occurred while they were in this judicial district.

//

## V. BACKGROUND FACTS

21. The IWBC is a federal agency responsible for operating the South Bay International Wastewater Treatment Plant (the "Plant") in South San Diego. The purpose of the wastewater plant is to collect large amounts of trash and sediment coming into the estuary from the Tijuana River, treat the sewage, and pump the treated water out into the Pacific Ocean.

22. The IWBC contracted with Veolia to operate, manage, and maintain the Plant. Veolia is a large international consulting firm that manages public projects for governments and private entities around the world.

23. Although it has received millions of dollars from the federal government to operate, manage and maintain the Plant, Veolia has, instead, caused, or contributed to, or failed to ameliorate, a public health and environmental crisis that continues to harm residents in Imperial Beach. Since 2018, the IWBC and Veolia have caused, or failed to prevent, over 500 illegal discharge incidents from the Plant, resulting in over a billion gallons of raw sewage being dumped into the River that flows into South San Diego.

24. Plaintiffs are informed and believe and based thereon allege that Veolia has failed, to such an enormous degree, to comply with the terms of its contract with the United States, by failing to adequately operate, manage, and maintain the Plant with due care and diligence, in contravention of its contractual mandate, such that it may not rely upon any derivative governmental immunity herein.

25. The effects of the recent sewage spills are well known and well documented, and while the Cities of Impeial Beach and Chula Vista, together with the San Diego Port Commission have previously sued the IBWC and Veolia, detailing years of neglect and incompetent management and maintenance of the Plant, such cases have merely sought injunctive relief and civil penalties. No relief has previously been directly sought to compensate the residents of Imperial Beach.

26. There is a noxious stench in the air the residents breath. The beaches in Imperial Beach have been closed for the last three years due to hazardous chemicals and bacteria in the water. Indeed, this very week, news articles have been generated documenting 1,000 days of beach closures in Imperial Beach.

27. The ocean water regularly tests positive for Norovirus and has even been found to have trace amounts of illegal drugs such as meth and cocaine from the Tijuana River. There have been "boil water" orders due to contaminated drinking water. There is an increase in the mosquito population causing fear of contracting diseases such as West Nile Virus. According to a recent report, the entire fish population is now gone from the estuary which feeds into the ocean.

28. Plaintiffs are informed and believe and based thereon allege that the level of toxic waste and pollution in the Tijuana River has increased tenfold over the last three years, the consequences of which has been exacerbated dramatically by Defendants' mismanagement of the Plant.

29. The California State Water Board has issued hundreds of violations to

IWBC and Veolia. But Defendants continue to allow the toxicity and pollution in the river and waters off the coast to increase and run unchecked and unremediated.

30. As a result of both the sewage leaks and the news coverage around them, the value of residential property in Imperial Beach has been negatively impacted.

## VI. CLASS ALLEGATIONS

31. Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all members of the following class (the "Class"):

"All persons who own residential real property in Imperial Beach as of the time of filing of the within complaint."

32. Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant has a controlling interest, and its current or former employees, officers, and directors; (3) counsel for Plaintiff and Defendant; and (4) legal representatives, successors, or assigns of any such excluded persons.

33. Plaintiffs are informed and believe and based theeon allege that the Class is so numerous, comprising over 10,000 persons, that joinder of all members is impracticable. Though the exact number and identities of Class members are unknown at this time, based on information and belief, many thousands of persons

own residential homes in Imperial Beach.

34. Common questions of law and fact exist as to all Class members. These common questions of law or fact predominate over any questions affecting only individual members of the Class. Common questions include, but are not limited to, the following:

(a) Whether Defendants caused, or failed to remedy or ameliorate, toxic and polluting waters adjacent to Imperial Beach;

(b) Whether such failure was negligent;

(c) Whether Imperial Beach homeowners have been damaged as the result of defendants' conduct.

35. Plaintiffs' claims are typical of the claims of the respective Class they seek to represent, in that the named Plaintiffs and all members of the proposed Class have suffered economic harm as a result of the same practices alleged herein. Plaintiffs have no interests adverse to the interests of the other members of the Class.

36. Plaintiffs will fairly and adequately protect the interests of the Class, and they have retained attorneys experienced in class actions and complex litigation as counsel.

37. Plaintiffs aver that the prerequisites for class action treatment apply to this action and that questions of law or fact common to the Class predominate over any questions affecting only individual members and that class action treatment is superior to other available methods for the fair and efficient adjudication of the

controversy which is the subject of this action. Plaintiffs further state that the interests of judicial economy will be served by concentrating litigation concerning these claims in this Court, and that the management of the Class will not be difficult.

**FIRST CLAIM FOR RELIEF**

**(Nuisance against all defendants)**

38. Throughout all of the events herein described, plaintiffs and the putative Class owned, leased, occupied or controlled residential real property in Imperial Beach, with an aggregate residential tax base of approximately $3 billion.

39. The defendants, by acting or failing to act, created a condition or permitted a condition to exist, that was harmful to health and was indecent or offensive to the senses for all persons living in Imperial Beach. This condition interfered with the plaintiffs' use or enjoyment of their homes. For example, families cannot enjoy the simple pleasure of swimming in the water in Imperial Beach because it is toxic and dangerous and residents must endure a "stink" coming from the ocean which has caused many residents to post signs saying "STOP THE STINK" in their yards.

//

//

//

//

//

//

40. The plaintiffs did not consent to the defendants' conduct.

41. An ordinary person would be reasonably annoyed or disturbed by the defendants' conduct.

42. Plaintiffs have been harmed both by their inability to enjoy the beach and waters adjacent thereto, as well as experiencing a reduced value in their homes, plus "the stink," due to the continued failure by defendants to remedy, ameliorate, or address meaningfully in any way the sewage problem in Imperial Beach.

43. The defendants' conduct was a substantial factor in causing the plaintiffs' harm.

44. The seriousness of the harm outweighs the public benefit of the defendants' conduct. Indeed, there is no public benefit to the defendant's total failure to correct, manage, ameliorate or address meaningfully the sewage issue.

45. Plaintiffs are informed and believe and based thereoin allege that as a direct

and proximate result of defendants' conduct, lack of effective action, and inaction, plaintiffs and the Class have been damaged in an amount in excess of $300 million.

## SECOND CLAIM FOR RELIEF

### (Negligence against all defendants)

46. Plaintiffs incorporate and reallge all prior allegations contained herein.

47. At all times herein defendants, and each of them, owed to plaintiffs and the Class a duty of due care to exercise that degree of control, management, and diligence necessary to protect the interests of plaintiffs and the Class.

48. Plaintiffs are informed and believe, and based thereon allege, that as the result of years of mismanagement and neglect, failure to take recommended corrective action, failure to head public and private warnings, failure to implement corrective action authorized by the federal government and other agencies, failure to secure sufficient funding to adequately address the issues presented, but not implemented through neglect and incompetency, defendants breached their duty of care owed to plaintiffs and the class.

49. As a direct and proximate result of defendants' negligence, plaintiffs and the Class have been damaged in an amount in excess of $300 million.

**Prayer for Relief:**

1. As to each cause of action, for compensatory damages according to proof;
2. For attorney's fees;
3. For costs of suit;

4. For such other and further relief as the court deems proper.

Dated: September 6, 2024

**The LAW OFFICES OF STEPHEN B. MORRIS**
**/s/Stephen B. Morris**

By: ______________________________
Stephen B. Morris, Esq.,
Lead Attorneys for plaintiffs and the putative class