| | |
|---|---|
| **BIENERT KATZMAN LITTRELL WILLIAMS LLP**<br>THOMAS H. BIENERT, Jr., SBN 135311<br>tbienert@bklwlaw.com<br>REBECCA S. ROBERTS, SBN 225757<br>rroberts@bklwlaw.com<br>903 Calle Amanecer, Suite 350<br>San Clemente, CA 92673<br>Telephone: (949) 369-3700<br>Facsimile: (949) 369-3701<br><br>*Attorneys for Defendants Veolia Water West Operating Services, Inc. and Veolia Water North America-West, LLC* | **MAYER BROWN LLP**<br>MATTHEW D. INGBER, NYBN 2964666<br>(*pro hac vice*)<br>mingber@mayerbrown.com<br>BENJAMIN D. BRIGHT, NYBN 5413596<br>(*pro hac vice*)<br>bbright@mayerbrown.com<br>1221 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 506-2500<br>Facsimile: (212) 262-1910<br><br>NICOLE A. SAHARSKY, DCBN 495433<br>(*pro hac vice*)<br>nsaharsky@mayerbrown.com<br>MINH NGUYEN-DANG, SBN 312031<br>mnguyen-dang@mayerbrown.com<br>1999 K Street NW<br>Washington, D.C. 20006<br>Telephone: (202) 263-3000<br>Facsimile: (202) 263-3300<br><br>MICHAEL A. OLSEN, ILBN 6237807<br>(*pro hac vice*)<br>molsen@mayerbrown.com<br>71 S. Wacker Drive<br>Chicago, IL 60606<br>Telephone: (312) 782-0600<br>Facsimile: (312) 701-7711 |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARVEL HARRISON, ATTILA CSANADI, LAWRENCE DANIEL MALCOM, CHAD TALBOT, ALENA TALBOT, JOHN PORCELLA, LENORA PORCELLA, SHANNON JOHNSON, SHAWN JOHNSON, DAVID THOMAS,<br><br>Plaintiffs,<br><br>v.<br><br>VEOLIA WATER WEST OPERATING SERVICES, INC. AND VEOLIA WATER NORTH AMERICA-WEST, LLC,<br><br>Defendants. | Case No.: 3:24-cv-01584-JES-VET<br><br>Hon. James E. Simmons, Jr.<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS VEOLIA WATER WEST OPERATING SERVICES, INC. AND VEOLIA WATER NORTH AMERICA-WEST, LLC'S MOTION TO DISMISS PURSUANT TO RULES 12(b)(1), (b)(6), & (b)(7)**<br><br>Date:     March 19, 2025<br>Time:     10:00 A.M<br>Courtroom: 4B |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1
ARGUMENT ............................................................................................................. 1
I.    PLAINTIFFS LACK STANDING UNDER ARTICLE III ................................ 1
II.    PLAINTIFFS FAIL TO STATE A CLAIM ....................................................... 5
      A.    Veolia May Claim Derivative Sovereign Immunity ....................................... 5
      B.    Plaintiffs Fail To State A Nuisance Claim ...................................................... 7
      C.    Plaintiffs Fail To State A Negligence Claim .................................................. 8
III.    THIS ACTION SHOULD BE DISMISSED BECAUSE THE USIBWC CANNOT BE JOINED ................................................................................... 10
CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................................. 3

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,
    674 F. Supp. 3d 884 (S.D. Cal. 2023) .................................................................. 8

*Bowen v. Energizer Holdings, Inc.*,
    118 F.4th 1134 (9th Cir. 2024) ............................................................................. 2

*Campbell-Ewald Co. v. Gomez*,
    577 U.S. 153 (2016) ............................................................................................. 6

*Clover v. Camp Pendleton*,
    2023 WL 2354807 (S.D. Cal. Mar. 4, 2023) ........................................................ 6

*Coppola v. Smith*,
    935 F. Supp. 2d 993 (E.D. Cal. 2013) .................................................................. 7

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*,
    276 F.3d 1150 (9th Cir. 2002) ............................................................................ 10

*EEOC v. Peabody W. Coal Co.*,
    610 F.3d 1070 (9th Cir. 2010) ............................................................................ 10

*Greenfield MHP Associates, L.P. v. Ametek, Inc.*,
    145 F. Supp. 3d 1000 (S.D. Cal. 2015) ................................................................ 8

*J'aire Corp. v. Gregory*,
    24 Cal. 3d 799 (1979) .......................................................................................... 9

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ................................................................................ 8

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ................................................................................ 6

*Masimo Corp. v. Apple, Inc.*,
    2021 WL 925885 (C.D. Cal. Jan. 6, 2021) ...................................................... 3, 6

*Murthy v. Missouri*,
  603 U.S. 43 (2024) ............................................................................................... 5

*North American Chemical Co. v. Superior Court*,
  59 Cal. App. 4th 764 (Ct. App. 1997) ................................................................. 9

*Nwauzor v. GEO Grp., Inc.*,
  127 F.4th 750 (9th Cir. 2025) .............................................................................. 6

*People v. City of Los Angeles*,
  160 Cal. App. 2d 494 (1958) ............................................................................... 8

*Redevelopment Agency of City of Stockton v. BNSF Ry. Co.*,
  643 F.3d 668 (9th Cir. 2011) ............................................................................... 7

*S. Cal. Gas Leak Cases v. Super. Ct. of Los Angeles*,
  7 Cal. 5th 391 (2019) ........................................................................................... 9

*Sabetian v. Exxon Mobil Corp.*,
  57 Cal. App. 5th 1054 (Cal. Ct. App. 2020) ............................................... 8, 9, 10

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ............................................................................. 1

*San Diego Unified Port Dist. v. Monsanto Co.*,
  612 F. Supp. 3d 1028 (S.D. Cal. 2020) ............................................................... 7

*Team Enters., LLC v. W. Inv. Real Estate Tr.*,
  647 F.3d 901 (9th Cir. 2011) ............................................................................... 7

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ............................................................................... 6

*United States v. Tamman*,
  782 F.3d 543 (9th Cir. 2015) ............................................................................... 4

*Wash. Envtl. Council v. Bellon*,
  732 F.3d 1131 (9th Cir. 2013) ............................................................................. 5

*Wormuth v. Lammersville Union Sch. Dist.*,
  305 F. Supp. 3d 1108 (E.D. Cal. 2018) ............................................................... 2

*Yearsley v. W.A. Ross Constr. Co.*,
  309 U.S. 18 (1940) ............................................................................................... 5

**Statutes and Regulations**

33 U.S.C. § 1251. ...................................................................................................... 9

42 U.S.C. § 6972 ....................................................................................................... 9

Cal. Civ. Code § 1431.2(a) ..................................................................................... 10

Cal. Civ. Code § 1431.2(b)(1) .................................................................................. 9

Cal. Water Code § 13050(m) .................................................................................... 7

Cal. Water Code § 13330 .......................................................................................... 9

40 C.F.R. § 135.1-5 ................................................................................................... 9

40 C.F.R. § 254.1-3 ................................................................................................... 9

**Other Authorities**

Fed. R. Civ. P. 12 ...................................................................................................... 6

Fed. R. Civ. P. 56 ...................................................................................................... 2

San Diego Region, Cal. Reg'l Water Quality Control Bd., *Executive Officer's Report* (Nov. 13, 2024).............................................................................. 2

*San Diego Regional Water Quality Control Board May Meeting*, YouTube (May 8, 2024).......................................................................................................... 3

# INTRODUCTION

Veolia's opening brief explained that plaintiffs' claims should be dismissed for three overarching reasons: They lack Article III standing; they fail to state a claim under state law; and the USIBWC is a required party that cannot be joined. Plaintiffs attempt to muddy the governing standards and the facts alleged in their own complaint – including by submitting an expert declaration full of inappropriate legal conclusions.

But ultimately, plaintiffs do not dispute two key points which show that Veolia is not responsible for the sewage near Imperial Beach. First, the ultimate source of the pollution allegedly impacting plaintiffs is Mexico. Transboundary flows are dumped directly into the Tijuana River and the Pacific Ocean and then wash north across the border toward Imperial Beach. The Plant has no physical connection to either water source. Second, Veolia is a contractor that operates the Plant at the USIBWC's express direction. The USIBWC, not Veolia, has ultimate decision-making authority over Plant operations, including with respect to wastewater discharge and Clean Water Act permit compliance.

Even with the benefit of favorable inferences at the motion to dismiss stage, plaintiffs fail to state any claim. This case should be dismissed with prejudice.

# ARGUMENT

## I. PLAINTIFFS LACK STANDING UNDER ARTICLE III

The opening brief explained that plaintiffs fail to establish Article III standing because they do not adequately allege that Veolia caused their alleged harm. Mot. Br. 8-11. Plaintiffs have essentially five responses; each lacks merit.

First, plaintiffs argue that Veolia cannot introduce facts outside the complaint. Opp. 3-5. But as plaintiffs concede, Veolia raises a "factual challenge" (Opp. 4) to plaintiffs' standing in addition to a facial challenge (Mot. Br. 8). In a factual challenge, the court "need not presume the truthfulness of the plaintiffs' allegations" and may consider "affidavits or other evidence" to determine whether subject matter jurisdiction exists. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Plaintiffs cite *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134 (9th Cir. 2024), which held that when a motion to dismiss for lack of subject matter jurisdiction raises a factual challenge to Article III standing and the issue of standing is intertwined with the merits, the court should apply the Rule 56 summary judgment standard. *Id.* at 1144. Even assuming plaintiffs are correct that Rule 56 applies, for the reasons explained below, they fail to identify any genuine issues of material fact.

Second, plaintiffs abandon the theory of liability pleaded in the complaint that their injuries were caused by pollution flowing through the Outfall. *See* Compl. ¶¶ 6, 8. Instead, they present an entirely new theory: that their injuries were caused by Veolia's alleged failure to intercept sewage flowing through the canyon collectors. Opp. 6-7. But the complaint never even references the canyon collectors, so it does not plead that theory. So even if the Rule 56 standard applies, *see* Opp. 5-6, "a party generally cannot oppose summary judgment by raising theories that lie outside the scope of their pleadings," *Wormuth v. Lammersville Union Sch. Dist.*, 305 F. Supp. 3d 1108, 1118 (E.D. Cal. 2018).

Further, plaintiffs' new theory fails on the merits. Veolia's evidence shows that Veolia performed the contract under the close direction and control of the USIBWC, in particular with respect to the canyon collectors. Plaintiffs have no response to that evidence. For example, in September 2024, the USIBWC approved shutting down a canyon collector after heavy sediment flows from Mexico damaged a newly installed pump. Wippler Decl. ¶ 7 & Ex. C, *Partlow, et al. v. Veolia Water West Operating Servs., et al.*, No. 3:24-cv-2162 (S.D. Cal. Feb. 12, 2025), Dkt. 24-1; *see id.* ¶ 7 ("USIBWC ultimately decides when the flow of sewage from the canyon collectors to the pump stations should be shut off, such as during rain events or when increased sediment flows from Mexico may damage equipment at the Plant.").

Similarly, the California Regional Water Quality Control Board for the San Diego region has noted several instances in which the USIBWC decided to take the canyon collectors offline "due to excessive sediment loading from Mexico." San Diego Region, Cal. Reg'l Water Quality Control Bd., *Executive Officer's Report* 2, 7 (Nov. 13, 2024),

1  https://waterboards.ca.gov/sandiego/publications_forms/publications/docs/executive_
2  officer_reports/2024/eor_11_13_2024.pdf.

3  The USIBWC thus on occasion shuts down the canyon collectors in order to prevent damage to the Plant, and that decision can cause "sewage and debris from Mexico [to] pool near the affected collector." Wippler Decl. ¶ 7. The ultimate authority to make that decision rests with the USIBWC, not Veolia. USIBWC Commissioner Dr. Maria Giner has explained that she is "intimately involved in . . . every single activity related to" Clean Water Act permit compliance and that the USIBWC is "not delegating this." *San Diego Regional Water Quality Control Board May Meeting* 1:13:55-1:14:20, YouTube (May 8, 2024), https://www.youtube.com/watch?v=fLelgalO9GY. Because there is no genuine issue of material fact that Veolia could not have prevented the pollution that allegedly caused plaintiffs' harm, plaintiffs have failed to satisfy the traceability requirement.

Third, plaintiffs argue that Veolia did not comply with its contractual obligations because it failed to operate the Plant with due care, causing their alleged injuries. Opp. 7. But the complaint's allegations on this point are conclusory: Plaintiffs allege, based on "inform[ation] and belie[f]," that Veolia failed "to comply with the terms of [the] contract." Compl. ¶ 24. The expert declaration supporting plaintiffs' opposition is no better, claiming without support that the Plant has been negatively affected by Veolia's "inadequate staffing," "maintenance," "planning," "implementation of contractual obligations and conditions, overly delayed maintenance, and a general lack of compliance with statutory and regulatory obligations." Daigger Decl. ¶ 21. Those conclusory allegations are insufficient on their face to plausibly establish the traceability requirement, *Masimo Corp. v. Apple, Inc.*, 2021 WL 925885, at *8 (C.D. Cal. Jan. 6, 2021), much less raise a genuine issue of disputed fact, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Fourth, plaintiffs rely (Opp. 7) on Clean Water Act permit violations as evidence that Veolia's actions contributed to their harm. But the San Diego Regional Water Control Board issued the notices of violations to the USIBWC, who is the permit holder, not Veolia. *See* Daigger Decl. Ex. 9. Indeed, the September 25, 2024, notice of violation makes clear

that the USIBWC controls all decisions relevant to wastewater discharge and permit compliance: "USIBWC is responsible to ensure that the obligations contained in its contract with Veolia are adequate to achieve and maintain compliance with the conditions of the Order. USIBWC is also responsible to ensure that the Veolia contract is executed, managed and, if needed, modified in a manner that achieves and maintains compliance with the conditions of the Order." *Id.* at 516.

Finally, plaintiffs rely (Opp. 8) on the USIBWC's letter to Representative Darrell Issa and the USIBWC-Veolia contract, which were attached as exhibits to Veolia's opening brief. Plaintiffs misread both documents.

As to the USIBWC letter, plaintiffs claim that the letter's reference to "deferred maintenance" and contract revisions implementing additional controls support an inference that Veolia failed to document necessary maintenance. Opp. 8. The letter states the opposite: "Beginning in 2011, Veolia provided [to USIBWC] a Capital Plan on an annual basis with recommendations on equipment maintenance and replacement"; due to limited allocations from Congress, "[USIBWC] only spent a cumulative $4M on [Plant] maintenance and capital repairs in excess of $100,000. Thus, many of the capital repairs that Veolia recommended were not implemented at that time and passed on as deferred maintenance year after year." Ingber Decl. Ex. D at 246. The letter thus establishes that the USIBWC was responsible for the Plant's deferred maintenance. Plaintiffs' assertion that contract revisions somehow reflect Veolia's earlier mismanagement lacks evidentiary support.

As to the contract, plaintiffs argue that Veolia exercised "discretion" under its terms, but their only support for that assertion is the expert declaration. Opp. 8 (citing Daigger Decl. ¶¶ 13, 15). Plaintiffs' expert is an engineer who asserts contractual arguments not made in the brief. *See id*. But the meaning of the contract is a question of law that is not an appropriate subject for expert testimony. *United States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015). And the contract speaks for itself: The USIBWC has final approval authority for Veolia's workplan, hiring of key personnel, recruitment, staffing, firing, and the Plant's safety plan and emergency preparedness plan; the USIBWC has authority to approve and

fund "major repairs, refurbishments, replacements, and upgrades in future years"; and Veolia personnel cannot "[b]e placed in a position of command, supervision, administration or control over USIBWC personnel." Mot. Br. 10. Crucially, the USIBWC's control and supervision over Veolia extend to water discharge and permit compliance, *see* pp. 3-4 *supra*, which are central to plaintiffs' theory of liability, Compl. ¶¶ 6, 8.

Plaintiffs also argue that Veolia's reliance on the operative agreement is "cherry picking," because there are earlier contracts with different language. Opp. 8. But the agreement was executed in 2020, *see* Ingber Decl. Ex. C at 186, and plaintiffs propose a class definition of "[a]ll persons who own residential real property in Imperial Beach as of the time of filing of the within complaint" in September 2024, Compl. ¶ 31. Plaintiffs do not explain why earlier iterations of the contract are relevant. Anyway, the 2015 contract contains the same provisions establishing USIBWC's control over Veolia. Second Ingber Decl. Ex. A at 13 § H.02(a)(1)(ii); C-3, C-6, C-8, C-9, C-10, C-15 C-22, C-24.

In sum, plaintiffs have failed to satisfy the traceability requirement. Where, as here, "the causal chain involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, . . . the causal chain is too weak to support standing." *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1142 (9th Cir. 2013); *see Murthy v. Missouri*, 603 U.S. 43, 68 n.8 (2024) (the traceability requirement "ensure[s] that in fact, the asserted injury was the consequence of the defendants' actions, rather than of the independent action" of a third party (quotation marks omitted)). The Court should dismiss this action for lack of standing.

## II. PLAINTIFFS FAIL TO STATE A CLAIM

### A. Veolia May Claim Derivative Sovereign Immunity

Plaintiffs do not contest that the first two elements of derivative sovereign immunity are satisfied—that the government has not waived its sovereign immunity, and that the government has validly conferred to the contractor the authority to carry out the contract. *See Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 20-21 (1940). Plaintiffs argue only that Veolia has not performed the contract as directed. Opp. 22-23. That is wrong.

Plaintiffs first contend that Veolia cannot claim derivative sovereign immunity because it is "limited to cases in which a contractor has no discretion in the design process and/or completely follows government specifications," and, they maintain, Veolia exercised independent discretion. Opp. 22. But derivative sovereign immunity extends to government contractors where, as here, the "challenged conduct is . . . dictated by its contract with the government." *Nwauzor v. GEO Grp., Inc.*, 127 F.4th 750, 770 (9th Cir. 2025); *Clover v. Camp Pendleton*, 2023 WL 2354807, at *6 (S.D. Cal. Mar. 4, 2023) (a contractor enjoys derivative immunity if it is "follow[s] government specifications").

Importantly, the complaint's allegations that Veolia did not comply with the contract are conclusory and based entirely on their "inform[ation] and belie[f]." Compl. ¶ 24. Those threadbare allegations are insufficient to defeat Veolia's assertion of the privilege. *See Masimo Corp.,* 2021 WL 925885, at *8. In their opposition brief, plaintiffs instead cite the expert declaration, Opp. 22 (citing Diagger Decl. ¶¶ 13-18), but on a Rule 12(b)(6) motion a district court may not consider evidence outside the complaint without converting it into a motion for summary judgment, *see United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003). In any event, the cited paragraphs merely summarize various provisions in the USIBWC-Veolia contract and say nothing about Veolia's compliance with its terms.

Plaintiffs further contend that derivative sovereign immunity does not apply to "contractors who violate federal law or fail to perform the scope of their government contracts." Opp. 22 (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016)). Plaintiffs misstate the holding of *Campbell-Ewald*, which is that derivative immunity does not shield a contractor from suit when it "violates both federal law *and* the Government's explicit instructions." 577 U.S. at 166 (emphasis added). They also fail to adequately plead both requirements. They claim that Veolia violated the Clean Water Act, but as noted above, the notices of violation cited the USIBWC, not Veolia.[1] *See* p. 3, *supra*. And, again, the only allegations that Veolia "failed to adequately comply with its contractual obligations,"

---

[1] The notices of violation are public records of which the Court may take judicial notice on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

Opp. 23, are based on plaintiffs' conclusory "inform[ation] and belie[f]," Compl. ¶¶ 24, 48. Veolia accordingly may claim derivative sovereign immunity.

### B. Plaintiffs Fail To State A Nuisance Claim

Plaintiffs failed to specify in the complaint whether they assert a claim for public or private nuisance. In their opposition brief, Plaintiffs abandon any public-nuisance claim. Opp. 11. Plaintiffs' private-nuisance claim should be dismissed because they failed to adequately plead either that Veolia "create[d] or assist[ed] in the creation of the nuisance" or that it "unreasonably fail[ed] to abate [the] nuisance." *Coppola v. Smith*, 935 F. Supp. 2d 993, 1018 (E.D. Cal. 2013).[2]

An entity creates or assists in the creation of a nuisance if its conduct "either (1) affirmatively instructs the polluting entity to dispose of hazardous substances in an improper or unlawful manner, or (2) manufactures or installs the disposal system." *Team Enters., LLC v. W. Inv. Real Estate Tr.*, 647 F.3d 901, 912 (9th Cir. 2011) (citation omitted).

Here, plaintiffs rely (Opp. 13) on the complaint's conclusory allegation that "Veolia . . . caused, or contributed to, or failed to ameliorate, a public health and environmental crisis" through "over 500 illegal discharge incidents from the Plant." Compl. ¶ 23. And in their brief, they claim "it is self-evident that Veolia 'instructed' its personnel to dump raw sewage or inadequately treated sewage into the ocean." Opp. 13. Plaintiffs do not provide any factual matter to support these assertions, much less that Veolia instructed the polluting entity to dispose of the pollution in an improper or unlawful manner, or that Veolia manufactured or installed the disposal system. To the extent the alleged 500 discharges relate to the Outfall, plaintiffs have abandoned that theory of liability.

Plaintiffs also fail to adequately allege that Veolia unreasonably failed to abate the nuisance. California law requires that a plaintiff show that a nuisance is "reasonably abatable given considerations of cost and practicality," *Redevelopment Agency of City of*

---

[2] Plaintiffs cite California Water Code § 13050(m) as providing the definition for nuisance. Opp. 10. But plaintiffs did not bring a claim under § 13050(m), *see* Compl. ¶¶ 38-45, and in any event, § 13050(m) defines a public nuisance, not a private nuisance, *see San Diego Unified Port Dist. v. Monsanto Co.*, 612 F. Supp. 3d 1028, 1040 (S.D. Cal. 2020).

*Stockton v. BNSF Ry. Co.*, 643 F.3d 668, 675 (9th Cir. 2011) (quotation marks omitted), but plaintiffs' allegations establish that the nuisance was *not* reasonably abatable. They allege that the Plant was designed to treat "25 million gallon[s] per day" and "has been negatively impacted by effluent flows from Mexico, exceeding design capacity and normal reasonably anticipated maintenance." Compl. ¶¶ 1-2. Plaintiffs also have no response to the fact that USIBWC, not Veolia, was responsible for major operational decisions regarding the Plant. *See* Mot. Br. 18. Plaintiffs have failed to state a private nuisance claim.

### C. Plaintiffs Fail To State A Negligence Claim

Plaintiffs' negligence claim fails because they have not adequately alleged that Veolia owed them a duty of care. The complaint identifies the source of Veolia's duty as its alleged "fail[ure] . . . to comply with the terms of its contract with the United States." Compl. ¶ 24.[3] As explained in the opening brief (at 19-20), California courts apply a six-factor balancing test to determine whether contracting parties owe a third party a duty of care, *see Sabetian v. Exxon Mobil Corp.*, 57 Cal. App. 5th 1054, 1077 (Cal. Ct. App. 2020), and the six factors overwhelmingly weigh against the existence of a duty.

Plaintiffs largely fail to respond (Opp. 16-17) to Veolia's arguments. In particular, they offer nothing to overcome the presumption that nonparties who benefit from a government contract are incidental rather than intended beneficiaries. *See In re Bank of Am. Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 938 (S.D. Cal. 2023). Nor do they respond to Veolia's argument that USIBWC was the ultimate decision-maker regarding Plant operations, which defeats several of the *Sabetian* factors. Mot. Br. 20.

Plaintiffs identify two other potential sources for a duty of care, but neither is availing. First, they cite *People v. City of Los Angeles*, 160 Cal. App. 2d 494 (1958), and *Greenfield MHP Associates, L.P. v. Ametek, Inc.*, 145 F. Supp. 3d 1000 (S.D. Cal. 2015), which they say held that "operators of sewage treatment facilities owe a heightened duty of care to the public." Opp. 14-15. But neither case discusses a general duty "to the public,"

---

[3] The Court may consider the contract because it is incorporated by reference to the complaint. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

much less a heightened duty. Second, plaintiffs cite three statutes as giving rise to a duty: the Clean Water Act, 33 U.S.C. § 1251 *et seq.*; the Resource Conservation and Recovery Act, 42 U.S.C. § 6972; and the Porter-Cologne Water Quality Control Act, Cal. Water Code § 13000 *et seq.* Opp. 15-16. But these statutes appear nowhere in the complaint, and plaintiffs do not assert a negligence per se claim. The statutes are irrelevant to determining the existence of a common-law duty. Further, plaintiffs fail to allege compliance with any of these statutes' pre-suit requirements. *See* 40 C.F.R. § 135.1-5 (CWA pre-suit notice requirements); 40 C.F.R. § 254.1-3 (RCRA pre-suit notice requirements); California Water Code § 13330 (Porter-Cologne Water Quality Act pre-suit requirements).

Plaintiffs also have no response to Veolia's argument that they failed to adequately allege breach. Opp. 17. Plaintiffs cite the allegations in the complaint, which are based on nothing more than "inform[ation] and belie[f]." Compl. ¶¶ 24, 48. As explained in the opening brief (at 21) and above (at 3, 6), that is insufficient to state a claim.

Finally, plaintiffs' negligence claim should be dismissed to the extent it seeks damages for economic harm, which the economic loss rule forbids. *See S. Cal. Gas Leak Cases v. Super. Ct. of Los Angeles*, 7 Cal. 5th 391, 403 (2019). Plaintiffs argue (Opp. 17-18) that odor is type of noneconomic harm, which Veolia does not dispute. But plaintiffs also seek recovery for the diminished value of their homes. *See* Compl. ¶ 42. That is a form of economic damages because it involves "objectively verifiable monetary losses." Cal. Civ. Code § 1431.2(b)(1). Plaintiffs cannot recover those damages via a negligence claim.

Plaintiffs argue that an exception to the economic loss rule applies when the parties are in a "special relationship." Opp. 18. To determine whether a special relationship exists, courts apply the same six-factor test set forth in *Sabetian*. *See J'aire Corp. v. Gregory*, 24 Cal. 3d 799, 805-06 (1979). As discussed in the opening brief (at 19-20) and above (at 8), these factors overwhelmingly weigh against the existence of a special relationship.[4]

---

[4] Plaintiffs rely (Opp. 18-19) on *North American Chemical Co. v. Superior Court*, 59 Cal. App. 4th 764 (Ct. App. 1997), but there the parties were in privity and the court held that the defendant's negligent conduct resulted in foreseeable economic loss to the plaintiff. Here, plaintiffs have failed to overcome the presumption that third parties are not intended

### III. THIS ACTION SHOULD BE DISMISSED BECAUSE THE USIBWC CANNOT BE JOINED

The Court should dismiss the complaint because the USIBWC—an indispensable defendant—cannot be joined to this action.

As the opening brief explained, complete relief is unavailable without the USIBWC because plaintiffs cannot recover the entirety of their noneconomic damages from Veolia. Mot. 22-23; *see* Cal. Civ. Code § 1431.2(a). Plaintiffs respond that they "do not seek non-economic damages in this case," Opp. 24, but earlier in their brief they argue the opposite, *id.* at 17-18 (arguing that plaintiffs have suffered "physical harm" and that their "injuries are much more than purely economic"). In addition, if the USIBWC is absent, Veolia would be at risk of inconsistent obligations: A party is likely to face inconsistent obligations when it is sued for actions mandated by an absent federal agency, and here the USIBWC directed Veolia's operation of the Plant. *See EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1081 (9th Cir. 2010). Plaintiffs respond only that their suit seeks to enforce Veolia's contract with the USIBWC, Opp. 24-25, ignoring that Plaintiffs' allegations that Veolia violated the contract are insufficient to state a claim, *see* pp. 3, 6, 9, *supra*.

Plaintiffs also argue (Opp. 25) that the USIBWC could be joined, noting that they have filed a Federal Tort Claims Act (FTCA) action against the USIBWC in an administrative proceeding. But they do not respond to Veolia's argument that the FTCA does not waive sovereign immunity where (like here) the discretionary-function exception applies. *See* Mot. Br. 12-14. Plaintiffs also have no response to Veolia's argument (*id.* at 23-24) that the USIBWC's absence would severely prejudice Veolia under the four-factor balancing test set forth in *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1161-62 (9th Cir. 2002).

### CONCLUSION

The Court should dismiss the complaint with prejudice.

---

beneficiaries of a government contract, and therefore that any harm resulting from performance of that contract is not foreseeable. *Sabetian*, 57 Cal. App. 5th at 1079.

...

Dated: March 5, 2025

**MAYER BROWN LLP**

By: */s/ Matthew D. Ingber*
Matthew D. Ingber, NYBN 2964666
(*pro hac vice*)
*mingber@mayerbrown.com*
Benjamin D. Bright, NYBN 5413596
*bbright@mayerbrown.com*
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

Nicole A. Saharsky, DCBN 495433
(*pro hac vice*)
*nsaharsky@mayerbrown.com*
Minh Nguyen-Dang, SBN 312031
*mnguyen-dang@mayerbrown.com*
1999 K Street NW
Washington, D.C. 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

Michael A. Olsen, ILBN 6237807
(*pro hac vice*)
*molsen@mayerbrown.com*
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711

**BIENERT KATZMAN LITTRELL WILLIAMS LLP**

By: */s/ Rebecca S. Roberts*
Thomas H. Bienert, Jr., SBN 135311
*tbienert@bklwlaw.com*
Rebecca S. Roberts, SBN 225757
*rroberts@bklwlaw.com*
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701

*ATTORNEYS FOR VEOLIA WATER WEST OPERATING SERVICES, INC. AND VEOLIA WATER NORTH AMERICA-WEST, LLC*