UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVEL HARRISON, et al.,<br><br>                          Plaintiffs,<br><br>v.<br><br>VEOLIA WATER WEST OPERATING SERVICES, INC., et al.,<br><br>                          Defendants. | Case No.: 3:24-cv-1584-JES-VET<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>**[ECF No. 19]** |

Pending before the Court is the Defendants' Motion to Dismiss. ECF No. 19. Plaintiff filed an opposition, and Defendants filed a reply. ECF Nos. 34, 36. On March 19, 2025, the Court held a hearing on the motion and took the matter under submission. ECF No. 41. After due consideration and for the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

## I. BACKGROUND

On September 6, 2024, Plaintiffs filed this lawsuit against Defendants Veolia Water West Operating Service, Inc. and Veolia Water North America West, LLC (collectively, "Veolia"). ECF No. 1. Plaintiffs are all residents in Imperial Beach, California, who allege that their homes suffered in value and that they suffer a loss of enjoyment of the waters bordering their community due to pollution originating from Tijuana, Mexico. *Id.* at 2.

The United States Section of the International Boundary and Water commission ("USIBWC") owns the South Bay International Wastewater Treatment Plant ("the Plant")

in San Diego, California. *Id.* ¶ 1. The Plant treats sewage that originates from Tijuana, Mexico, and discharges the treated water into the Pacific Ocean at the South Bay Outfall. *Id.* ¶ 2. Plaintiffs allege that the USIBWC has contracted with Veolia to operate, manage, and maintain the Plant. *Id.* ¶ 22.

Plaintiffs allege that Veolia, together with the USIBWC, has caused or failed to prevent over 500 illegal discharge incidents from the Plant since 2018 that have polluted the neighboring waters. *Id.* ¶ 23. Thus, Plaintiffs claim that Veolia has "caused, or contributed to, or failed to ameliorate, a public health and environmental crisis that continues to harm residents in Imperial Beach." *Id.* Plaintiffs further allege that Veolia has itself failed to comply with the terms of its contract with the USIBWC. *Id.* ¶ 24. Due to these discharges, Plaintiffs allege that there is a noxious stench residents breathe in Imperial Beach, the adjacent ocean water tests of various chemical and drugs, and the pollution has increased significantly over the last few years. *Id.* ¶¶ 26-30. Based on the foregoing, Plaintiffs assert two causes of action for (1) nuisance; and (2) negligence. *Id.* ¶¶ 38-49.

Pending now before the Court is Defendants' motion to dismiss. ECF No. 19. Defendants move to dismiss the complaint on two grounds: (1) for lack of standing; and (2) for failure to state a claim. *Id.*

## II.   STANDING

### A.   Legal Standards

In order to bring a case in federal court, a plaintiff is limited to bringing in actual "cases and controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). One of the prudential considerations is that the plaintiff must have standing to sue. *Id.* This requires the plaintiff to establish three elements: (1) an injury-in-fact— "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) causation—that the injury is "fairly traceable to the challenged action of the defendant;" and (3) redressability—that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable

decision." *Id.* at 560-61. Defendants' motion to dismiss for lack of standing focuses on the second of these elements—namely that Plaintiffs' injuries are not "fairly traceable" to them. ECF No. 19-1 at 14-17.

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may bring a motion to dismiss based on lack of subject matter jurisdiction, which includes a challenge to lack of standing. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010). The challenge may be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* In a factual attack, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* The truthfulness of the allegations in the complaint are not presumed. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Rather, "[o]nce the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air*, 373 F.3d at 1039 (citation omitted).

### B. Consideration of Evidence Outside the Pleadings

Before getting to the merits of the arguments, the Court must first consider both parties' reliance on evidence outside the pleadings. Defendants make a factual attack on standing here, which does permit the parties to then bring in evidence beyond the complaint. However, that leaves open the question of how the Court should handle conflicting evidence.

In *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1143 (9th Cir. 2024), the Ninth Circuit explained that how a court treats disputed factual issues turns on whether jurisdictional disputes are intertwined with the merits of the claim. If "jurisdictional disputes are not intertwined with the merits of the claim, then it falls to the district court to

'resolve those factual disputes itself.'" *Id.* (cleaned up). "Conversely, when jurisdictional issues are 'intertwined with an element of the merits of the plaintiff's claim,' the court must treat the motion like a motion for summary judgment and 'leave the resolution of material factual disputes to the trier of fact.'" *Id.* In *Bowen*, the court concluded that where there is "clear overlap" between the theory of Article III injury and the injury element of the substantive claim in the case, the allegations of standing cannot be separated from the merits of the claim such that the district court was permitted to resolve factual disputes. *Id.* at 1145-46. Because the resolution of the standing issue would necessarily require the district court to resolve issues going to the merits of the claim, resolution of any disputed facts must be left to the trier of fact. *Id.*

Here, whether this Court may resolve factual issues or not at this motion to dismiss for standing stage similarly turns on whether the Article III causation issue is so intertwined with any element of the Plaintiffs' claims such that a resolution on standing would require the Court to resolve an issue on the merits. The claims asserted by Plaintiffs here are for nuisance and negligence. The Court finds that, like in *Bowen*, causation for Article III standing would require it to resolve issues going to the merits of the claims. For example, causation is a well-established element of the negligence claim. *See Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 912 (S.D. Cal. 2020). Thus, the Court finds it appropriate to review the evidence under summary judgment standards and will refrain from adjudicating any factual disputes at this motion to dismiss stage.

**C.  Discussion**

Defendants argue that the harms alleged by Plaintiffs cannot be "fairly traceable" to their actions. First, they cite studies that they argue show that the main source of the pollution affecting water quality off the coast of Imperial Beach is "water runoff from metropolitan Tijuana, and discharges of untreated or partially treated sewage from [a plant in] Punta Bandera in Mexico." ECF No. 19-1 at 15. They argue that the Outfall has specifically been ruled out as a source of that pollution. *Id.* at 15-16. Finally, even if some small amount of runoff from the Outfall did reach the waters off Imperial Beach,

Defendants argue that it is USIBWC—not them—that controls the operations at the Plant. *Id.* at 16-17. Specifically Defendants cite the following evidence of that: (1) the contract with USIBWC states that Veolia personnel cannot be placed in positions of "command, supervision, administration or control over USIBWC personnel;" (2) USIBWC's contracting officer has final approval authority for Veolia's workplan, hiring of key personnel, recruitment, staffing, firing, the Plant's safety plan and emergency preparedness plan, and discretion to issue stop-work orders; (3) only USIBWC has authority to approve and fund "major repairs, refurbishments, replacements, and upgrades in future years;" and (4) it is USIBWC that has at times made the final decision to shut off the pipelines connecting the canyon collectors to the pump stations to prevent the accumulation of silt, debris, and large garbage that could destroy Plant equipment. *Id.*

Plaintiffs counter that it does not matter if there are other factors that contributed to the harm, but that Defendants' actions only need to be a "substantial factor" in causing the harm. ECF No. 34 at 11. As for evidence of that position, Plaintiffs submit a declaration from an expert, who opines that Veolia failed to intercept and divert raw sewage from Tijuana through the Canyon Interceptors, which Veolia had let fall into disrepair. ECF No. 34-1, Declaration of Glen Daigger, ¶¶ 20, 24-25. Plaintiffs submit that this waste should have been treated at the Plant, but instead went directly into the Tijuana River and Estuary, which then contributed to the pollution into the ocean. ECF No. 34 at 12. Daigger also opines that Veolia failed to comply with its contract for years. ECF No. 34-1, ¶¶ 20-22.

Applying summary judgment standards under *Bowen* with this evidence in mind, the Court finds that there are genuine disputes of material fact that render dismissal based on lack of standing improper. At the very least, there is a dispute over what sources contribute to the pollution at issue here, with Defendants citing evidence that the pollution is not attributable to their actions while Plaintiffs cite expert testimony that it can be traced partially to Veolia's actions at the Canyon Interceptors and Plant. There is also a dispute over what level of control Veolia retains under the contract between Veolia and the USIBWC. These factual disputes preclude this Court from finding that Plaintiffs lack

standing to bring this claim against Defendants at this stage. Accordingly, the Court **DENIES** the motion to dismiss for lack of standing.

### III.   FAILURE TO STATE A CLAIM

In addition to the standing issue, Defendants also raise several failure to state a claim issues under Federal Rule of Civil Procedure 12(b)(6). For the remainder of these issues, even though Plaintiffs substantively opposed them in their opposition to the motion (ECF No. 34), during the motion hearing, Plaintiffs requested leave to amend the complaint as to the issues rather than address the substantive arguments.

For the nuisance claim, during the motion hearing, Plaintiffs acknowledge that the Court said that the claim "could have been more clear, and we agree with the Court" and asked the Court for leave to amend the nuisance claim to provide more detail. ECF No. 41 at 25:9-13. Similarly, for the negligence claim, Plaintiffs stated that since filing of the complaint, they have retained the services of an expert and "discovered new ways in which Veolia was negligent" and also requested leave to amend the complaint for the negligence claim. *Id.* at 25:14-22.

For the indispensable party issue, Plaintiffs stated that they filed a Federal Tort Claims Act claim on October 3, 2024 and after six months from that point, they would be able to and "intend on bringing in the USIBWC." *Id.* at 25:23-26:4.

For the derivative sovereign immunity argument, when questioned by the Court on whether their allegations in their complaint were too conclusory, Plaintiffs stated "[w]ell, one way to address it, your Honor, candidly, is that we are hopefully going to be given leave to amend, we can flesh out those facts better with the assistance of [our expert's] opinions" and they can do better and they will. *Id.* at 26:5-27:11.

Requests for leave to amend the complaint are generally granted liberally. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (rule "to be applied with extreme liberality"); *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999) (noting "strong policy permitting amendment"). Consistent with this policy, the Court

noted at the motion hearing that it intended to grant leave to amend. ECF No. 42 at 27:1-6. Accordingly, based on the representations made at the oral argument on this motion, the Court **GRANTS AS MOOT** the remainder of Defendants' motion to dismiss.[1] Plaintiffs shall have **21 days from the date of this Order** to file an amended complaint, in accordance with the representations made at the motion hearing.

### D. CONCLUSION

After due consideration and for the reasons discussed above, the Court **DENIES IN PART AND GRANTS IN PART** Defendants' motion to dismiss the complaint with leave to amend. Plaintiff shall file an amended complaint **within 21 days of this order**.

**IT IS SO ORDERED.**

Dated: September 12, 2025

_____
Honorable James E. Simmons Jr.
United States District Judge

---

[1] To be clear, the Court is not ruling on any of the parties' substantive arguments at this time given Plaintiffs' plan to amend the complaint on those issue.